**U.S. Bankruptcy Court**

**Middle District of Pennsylvania**

Notice of Electronic Claims Filing

The following transaction was received from Warmbrodt, James on 4/17/2020 at 11:55 AM EDT

File another claim

| | |
|---|---|
| **Case Name:** | Robin Mae Garrett |
| **Case Number:** | 1:20-bk-00459-HWV |
| **Creditor Name:** | M&T Bank<br>PO Box 840<br>Buffalo, NY 14240 |
| **Claim Number:** | 6    Claims Register |
| **Amount Claimed:** | $104611.99 |
| **Amount Secured:** | $104611.99 |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**POC.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=4/17/2020] [FileNumber=16242220-0] [023d5efd8827e6e1bef0c752cecf77549dcdf44aadab99fd8a6cc481d418711426 d691b977f7be39485786c2ae91440e6de0ff72e51dd7093ae17cf08ebd07d5]]
**Document description:**Exhibit 410A
**Original filename:**C:\fakepath\410A.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=4/17/2020] [FileNumber=16242220-1] [bc0b236e8ec25dc680d5fad76291bbbc33f05b182648aae91d77115da529ed5030 e0c3ef1f38f5968c2b2890cba3f06426df220788e8f747852d72b52da09ccb]]
**Document description:**Exhibit Escrow Analysis
**Original filename:**C:\fakepath\Escrow Analysis.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=4/17/2020] [FileNumber=16242220-2] [85f344cf0402702ff46d5dd5b049afb1984c80ede41436bbdfa0657b6406cc5b14 fb4cafc6fc0757de39d4917cfa3c3222d43ffc48cbd01d02908bba1b2b54a0]]
**Document description:**Exhibit Loan documents
**Original filename:**C:\fakepath\Loan Docs.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=4/17/2020] [FileNumber=16242220-3] [7a7537481189b8f935bdfaeb907892f3cd8c6828c6aef25551d3c4fb88e4ab228d 7934c5b46e9796e3ad268c53e59af31455d8c6272ab39373aa2ad0f54b5afb]]

**1:20-bk-00459-HWV Notice will be electronically mailed to:**

Charles J DeHart, III (Trustee)
TWecf@pamd13trustee.com

Brent Diefenderfer on behalf of Debtor 1 Robin Mae Garrett
bdiefenderfer@cgalaw.com,
tlocondro@cgalaw.com;scomegna@cgalaw.com;rminello@cgalaw.com;kbrayboy@cgalaw.com;jrosenau@cgalaw.com;r48835@notify.bestcase.com

United States Trustee
ustpregion03.ha.ecf@usdoj.gov

James Warmbrodt on behalf of Creditor M&T Bank
bkgroup@kmllawgroup.com

**1:20-bk-00459-HWV Notice will not be electronically mailed to:**

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

Debtor 1     Robin Mae Garrett
(Spouse, if filing)

United States Bankruptcy Court for the MIDDLE District of Pennsylvania

Case number   20-00459 HWV

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. **Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. | **Who is the current creditor?** | **M&T Bank** |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| | | | |
| --- | --- | --- | --- |
| 2. | **Has this claim been acquired from someone else?** | ☒ No | |
| | | ☐ Yes.  From whom? _____ | |

| | | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- | --- |
| 3. | **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **M&T Bank** <br> Name | **M&T Bank** <br> Name |
| | | **PO Box 840** <br> Number     Street | **PO Box 1288** <br> Number     Street |
| | | **Buffalo, NY 14240** <br> City     State     Zip Code | **Buffalo, NY 14240** <br> City     State     Zip Code |
| | | Contact phone | Contact phone |
| | | Contact Email | Contact Email |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br><br> _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| | | | |
| --- | --- | --- | --- |
| 4. | **Does this claim amend one already filed?** | ☒ No | |
| | | ☐ Yes.  Claim number on court claims registry (if known)_____ | Filed on ___/___/_____ <br> MM / DD / YYYY |

| | | |
| --- | --- | --- |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No |
| | | ☐ Yes.  Who made the earlier filing? _____ |

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor **2910** |

7. **How much is this claim?** $\underline{\text{104,611.99}}$                    Does this amount include interest or other charges?

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.

**Nature of property: 101 Fame Avenue Hanover, PA 17331**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** **Deed of Trust, Mortgage, Note**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                    $_____

Amount of the claim that is secured:    $\underline{\text{104,611.99}}$

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $\underline{\text{17,306.92}}$

Annual Interest Rate (when case was filed) **4.25%**

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**     $_____

11. **Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  **04/17/2020**
MM / DD / YYYY

**/s/ James C. Warmbrodt Esquire Attorney ID#  42524**

Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | **James C. Warmbrodt** | | |
| | First name | Middle name | Last name |
| Title | **Bankruptcy Attorney** | | |
| Company | **KML Law Group, P.C.** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **701 Market Street, Suite 5000** | | |
| | Number          Street | | |
| | **Philadelphia**          **PA**          **19106** | | |
| | City          State          ZIP Code | | |
| Contact phone | **412-430-3594** | Email | **jwarmbrodt@kmllawgroup.com** |

243

Official Form 410     Case 1:20-bk-00459-HWV     Doc 25-2     Filed 06/26/20     Entered 06/26/20 15:55:38     Desc
Exhibit Proof of Claim     Page 4 of 56
Proof of Claim     page 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Robin Mae Garrett | CHAPTER 13 |
| Debtor(s) | |
| | NO. 20-00459 HWV |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for M&T Bank do hereby certify that true and correct copies of the foregoing Proof of Claim have been served <u>April 17, 2020</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
Brent Diefenderfer
CGA Law Firm
135 North George Street
York, PA 17401

<u>Bankruptcy Trustee</u>
Charles J. DeHart, III Esq.
8125 Adams Drive, Suite A (VIA ECF)
Hummelstown, PA 17036

Date: <u>April 17, 2020</u>

**/s/James C. Warmbrodt Esquire**
James C. Warmbrodt Esquire
Attorney I.D. 42524
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
412-430-3594
jwarmbrodt@kmllawgroup.com

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case Number: | 1:20-bk-00459-HWV |
| Debtor 1: | Robin Mae Garrett |
| Debtor 2: | N/A |
| Last 4 digits used to Identify | 2910 |
| Creditor: | M&T Bank |
| Servicer: | M&T Bank |
| Fixed accrual, Daily simple interest or other: | Fixed accrual |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal Balance: | 90659.86 |
| Interest Due: | 4816.35 |
| MIP Amount: | 0.00 |
| Fees, Costs Due: | 6580.47 |
| Escrow deficiency for funds advanced: | 2555.31 |
| Less total funds on hand: | 0.00 |
| Total Debt: | 104611.99 |

**Part 3: Arrearage as of Date of Petition**

| | |
|---|---|
| Principal & Interest Due | 6356.00 |
| Prepetition fees due: | 6580.47 |
| Escrow deficiency for funds advanced: | 2555.31 |
| Projected escrow shortage: | 1815.14 |
| Less funds on hand: | 0.00 |
| Total prepetition arrearage | 17306.92 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & Interest | 454.00 |
| Monthly Escrow | 302.52 |
| Private Mortgage Insurance | 0.00 |
| Total Monthly Payment | 756.52 |
| 1st Post Petition Payment Due | 3/1/2020 |

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow Balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Beginning Balance | | 0.00 | | | | | | 91,775.91 | | 1,578.92 | 0.00 | 0.00 |
| 5/1/18 | 742.48 | | | Contractual Payment Due | 5/1/2018 | 742.48 | | | | | | 91,775.91 | | 1,578.92 | 0.00 | 0.00 |
| 5/13/18 | | | | Escrow Refund | 5/1/2018 | 742.48 | | | -277.66 | | | 91,775.91 | | 1,301.26 | 0.00 | 0.00 |
| 6/1/18 | 742.48 | | | Contractual Payment Due | 5/1/2018 | 1,484.96 | | | | | | 91,775.91 | | 1,301.26 | 0.00 | 0.00 |
| 6/11/18 | | 800.00 | | Payment Applied | 5/1/2018 | 742.48 | 128.96 | 325.04 | 288.48 | | 57.52 | 91,646.95 | | 1,589.74 | 0.00 | 57.52 |
| 7/1/18 | 743.57 | | | Contractual Payment Due | 6/1/2018 | 1,486.05 | | | | | | 91,646.95 | | 1,589.74 | 0.00 | 57.52 |
| 8/1/18 | 743.57 | | | Contractual Payment Due | 6/1/2018 | 2,229.62 | | | | | | 91,646.95 | | 1,589.74 | 0.00 | 57.52 |
| 8/1/18 | | | | Town Tax | 6/1/2018 | 2,229.62 | | | -1,829.69 | | | 91,646.95 | | -239.95 | 0.00 | 57.52 |
| 8/20/18 | | 750.00 | | Payment Applied | 6/1/2018 | 1,487.14 | 129.42 | 324.58 | 288.48 | | 7.52 | 91,517.53 | | 48.53 | 0.00 | 65.04 |
| 8/31/18 | | 750.00 | | Funds Received | 7/1/2018 | 1,487.14 | | | | | 750.00 | 91,517.53 | | 48.53 | 0.00 | 815.04 |
| 9/1/18 | 743.57 | | | Contractual Payment Due | 7/1/2018 | 2,230.71 | | | | | | 91,517.53 | | 48.53 | 0.00 | 815.04 |
| 9/2/18 | | | | Payment Applied | 7/1/2018 | 1,487.14 | 129.88 | 324.12 | 289.57 | | -743.57 | 91,387.65 | | 338.10 | 0.00 | 71.47 |
| 9/14/18 | | 743.57 | | Payment Applied | 8/1/2018 | 743.57 | 130.34 | 323.66 | 289.57 | | | 91,257.31 | | 627.67 | 0.00 | 71.47 |
| 9/27/18 | | | | Hazard Insurance | 9/1/2018 | 743.57 | | | -711.00 | | | 91,257.31 | | -83.33 | 0.00 | 71.47 |
| 10/1/18 | 743.57 | | | Contractual Payment Due | 9/1/2018 | 1,487.14 | | | | | | 91,257.31 | | -83.33 | 0.00 | 71.47 |
| 10/12/18 | | 743.57 | | Payment Applied | 9/1/2018 | 743.57 | 130.80 | 323.20 | 289.57 | | | 91,126.51 | | 206.24 | 0.00 | 71.47 |
| 11/1/18 | 743.57 | | | Contractual Payment Due | 10/1/2018 | 1,487.14 | | | | | | 91,126.51 | | 206.24 | 0.00 | 71.47 |
| 12/1/18 | 743.57 | | | Contractual Payment Due | 10/1/2018 | 2,230.71 | | | | | | 91,126.51 | | 206.24 | 0.00 | 71.47 |
| 1/1/19 | 759.77 | | | Contractual Payment Due | 10/1/2018 | 2,990.48 | | | | | | 91,126.51 | | 206.24 | 0.00 | 71.47 |
| 1/9/19 | | 743.57 | | Funds Received | 10/1/2018 | 2,990.48 | | | | | 743.57 | 91,126.51 | | 206.24 | 0.00 | 815.04 |
| 1/10/19 | | | | Payment Applied | 10/1/2018 | 2,246.91 | 131.26 | 322.74 | 289.57 | | -743.57 | 90,995.25 | | 495.81 | 0.00 | 71.47 |
| 2/1/19 | 759.77 | | | Contractual Payment Due | 11/1/2018 | 3,006.68 | | | | | | 90,995.25 | | 495.81 | 0.00 | 71.47 |
| 2/1/19 | | 743.57 | | Payment Applied | 11/1/2018 | 2,263.11 | 131.73 | 322.27 | 289.57 | | | 90,863.52 | | 785.38 | 0.00 | 71.47 |
| 3/1/19 | 759.77 | | | Contractual Payment Due | 12/1/2018 | 3,022.88 | | | | | | 90,863.52 | | 785.38 | 0.00 | 71.47 |
| 3/15/19 | | 743.57 | | Payment Applied | 12/1/2018 | 2,279.31 | 132.19 | 321.81 | 289.57 | | | 90,731.33 | | 1,074.95 | 0.00 | 71.47 |
| 3/26/19 | | | | County Tax | 1/1/2019 | 2,279.31 | | | -1,017.51 | | | 90,731.33 | | 57.44 | 0.00 | 71.47 |
| 4/1/19 | 759.77 | | | Contractual Payment Due | 1/1/2019 | 3,039.08 | | | | | | 90,731.33 | | 57.44 | 0.00 | 71.47 |
| 4/23/19 | | | 15.00 | Property Inspection | 1/1/2019 | 3,039.08 | | | | 15.00 | | 90,731.33 | | 57.44 | 15.00 | 71.47 |
| 5/1/19 | 759.77 | | | Contractual Payment Due | 1/1/2019 | 3,798.85 | | | | | | 90,731.33 | | 57.44 | 15.00 | 71.47 |
| 5/28/19 | | | 15.00 | Property Inspection | 1/1/2019 | 3,798.85 | | | | 15.00 | | 90,731.33 | | 57.44 | 30.00 | 71.47 |
| 6/1/19 | 759.77 | | | Contractual Payment Due | 1/1/2019 | 4,558.62 | | | | | | 90,731.33 | | 57.44 | 30.00 | 71.47 |
| 6/17/19 | | | 30.39 | Late Charge | 1/1/2019 | 4,558.62 | | | | 30.39 | | 90,731.33 | | 57.44 | 60.39 | 71.47 |
| 6/17/19 | | | | Principal Payment | 1/1/2019 | 4,558.62 | 71.47 | | | | -71.47 | 90,659.86 | | 57.44 | 60.39 | 0.00 |
| 6/25/19 | | | | | | | | | | | | 90,659.86 | | 57.44 | 75.39 | 0.00 |

| Date | | | Description | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/19 | 759.77 | | Contractual Payment Due | 1/1/2019 | 5,318.39 | | | 90,659.86 | 57.44 | 75.39 | 0.00 |
| 7/2/19 | | 25.00 | FC Atty Fees | 1/1/2019 | 5,318.39 | | 25.00 | 90,659.86 | 57.44 | 100.39 | 0.00 |
| 7/8/19 | | 365.00 | FC Cost Title | 1/1/2019 | 5,318.39 | | 365.00 | 90,659.86 | 57.44 | 465.39 | 0.00 |
| 7/9/19 | | 1.00 | FC Cost Service | 1/1/2019 | 5,318.39 | | 1.00 | 90,659.86 | 57.44 | 466.39 | 0.00 |
| 7/19/19 | | 15.00 | Property Inspection | 1/1/2019 | 5,318.39 | | 15.00 | 90,659.86 | 57.44 | 481.39 | 0.00 |
| 7/29/19 | | 238.00 | FC Cost Filing | 1/1/2019 | 5,318.39 | | 238.00 | 90,659.86 | 57.44 | 719.39 | 0.00 |
| 7/29/19 | | 150.00 | FC Cost Service | 1/1/2019 | 5,318.39 | | 150.00 | 90,659.86 | 57.44 | 869.39 | 0.00 |
| 7/30/19 | | 1,175.00 | FC Atty Fees | 1/1/2019 | 5,318.39 | | 1,175.00 | 90,659.86 | 57.44 | 2,044.39 | 0.00 |
| 8/1/19 | 759.77 | | Contractual Payment Due | 1/1/2019 | 6,078.16 | | | 90,659.86 | 57.44 | 2,044.39 | 0.00 |
| 8/2/19 | | | School Tax | 1/1/2019 | 6,078.16 | -1,865.75 | | 90,659.86 | -1,808.31 | 2,044.39 | 0.00 |
| 8/15/19 | | 15.00 | Property Inspection | 1/1/2019 | 6,078.16 | | 15.00 | 90,659.86 | -1,808.31 | 2,059.39 | 0.00 |
| 8/16/19 | | 470.00 | FC Atty Fees | 1/1/2019 | 6,078.16 | | 470.00 | 90,659.86 | -1,808.31 | 2,529.39 | 0.00 |
| 9/1/19 | 759.77 | | Contractual Payment Due | 1/1/2019 | 6,837.93 | | | 90,659.86 | -1,808.31 | 2,529.39 | 0.00 |
| 9/11/19 | | 0.50 | FC Cost Service | 1/1/2019 | 6,837.93 | | 0.50 | 90,659.86 | -1,808.31 | 2,529.89 | 0.00 |
| 9/14/19 | | 15.00 | Property Inspection | 1/1/2019 | 6,837.93 | | 15.00 | 90,659.86 | -1,808.31 | 2,544.89 | 0.00 |
| 9/30/19 | | | Hazard Insurance | 1/1/2019 | 6,837.93 | -747.00 | | 90,659.86 | -2,555.31 | 2,544.89 | 0.00 |
| 10/1/19 | 759.77 | | Contractual Payment Due | 1/1/2019 | 7,597.70 | | | 90,659.86 | -2,555.31 | 2,544.89 | 0.00 |
| 10/12/19 | | 79.00 | FC Cost Filing | 1/1/2019 | 7,597.70 | | 79.00 | 90,659.86 | -2,555.31 | 2,623.89 | 0.00 |
| 10/12/19 | | 3,000.00 | FC Cost Service | 1/1/2019 | 7,597.70 | | 3,000.00 | 90,659.86 | -2,555.31 | 5,623.89 | 0.00 |
| 10/13/19 | | 15.00 | Property Inspection | 1/1/2019 | 7,597.70 | | 15.00 | 90,659.86 | -2,555.31 | 5,638.89 | 0.00 |
| 10/17/19 | | 470.00 | FC Atty Fees | 1/1/2019 | 7,597.70 | | 470.00 | 90,659.86 | -2,555.31 | 6,108.89 | 0.00 |
| 10/28/19 | | 140.00 | FC Cost Title | 1/1/2019 | 7,597.70 | | 140.00 | 90,659.86 | -2,555.31 | 6,248.89 | 0.00 |
| 11/1/19 | 759.77 | | Contractual Payment Due | 1/1/2019 | 8,357.47 | | | 90,659.86 | -2,555.31 | 6,248.89 | 0.00 |
| 11/9/19 | | 15.00 | Property Inspection | 1/1/2019 | 8,357.47 | | 15.00 | 90,659.86 | -2,555.31 | 6,263.89 | 0.00 |
| 12/1/19 | 759.77 | | Contractual Payment Due | 1/1/2019 | 9,117.24 | | | 90,659.86 | -2,555.31 | 6,263.89 | 0.00 |
| 12/5/19 | | 15.00 | Property Inspection | 1/1/2019 | 9,117.24 | | 15.00 | 90,659.86 | -2,555.31 | 6,278.89 | 0.00 |
| 12/11/19 | | 1.71 | FC Cost Service | 1/1/2019 | 9,117.24 | | 1.71 | 90,659.86 | -2,555.31 | 6,280.60 | 0.00 |
| 12/11/19 | | 1.06 | FC Cost Service | 1/1/2019 | 9,117.24 | | 1.06 | 90,659.86 | -2,555.31 | 6,281.66 | 0.00 |
| 12/11/19 | | 1.06 | FC Cost Service | 1/1/2019 | 9,117.24 | | 1.06 | 90,659.86 | -2,555.31 | 6,282.72 | 0.00 |
| 12/11/19 | | 1.06 | FC Cost Service | 1/1/2019 | 9,117.24 | | 1.06 | 90,659.86 | -2,555.31 | 6,283.78 | 0.00 |
| 12/11/19 | | 1.06 | FC Cost Service | 1/1/2019 | 9,117.24 | | 1.06 | 90,659.86 | -2,555.31 | 6,284.84 | 0.00 |
| 12/11/19 | | 1.06 | FC Cost Service | 1/1/2019 | 9,117.24 | | 1.06 | 90,659.86 | -2,555.31 | 6,285.90 | 0.00 |
| 12/11/19 | | 1.71 | FC Cost Service | 1/1/2019 | 9,117.24 | | 1.71 | 90,659.86 | -2,555.31 | 6,287.61 | 0.00 |
| 12/11/19 | | 1.71 | FC Cost Service | 1/1/2019 | 9,117.24 | | 1.71 | 90,659.86 | -2,555.31 | 6,289.32 | 0.00 |
| 12/11/19 | | 1.06 | FC Cost Service | 1/1/2019 | 9,117.24 | | 1.06 | 90,659.86 | -2,555.31 | 6,290.38 | 0.00 |
| 12/11/19 | | 5.60 | FC Cost Service | 1/1/2019 | 9,117.24 | | 5.60 | 90,659.86 | -2,555.31 | 6,295.98 | 0.00 |
| 12/23/19 | | 150.00 | FC Cost Title | 1/1/2019 | 9,117.24 | | 150.00 | 90,659.86 | -2,555.31 | 6,445.98 | 0.00 |
| 12/24/19 | | 45.00 | FC Cost Service | 1/1/2019 | 9,117.24 | | 45.00 | 90,659.86 | -2,555.31 | 6,490.98 | 0.00 |
| 12/30/19 | | 350.00 | Appraisal | 1/1/2019 | 9,117.24 | | 350.00 | 90,659.86 | -2,555.31 | 6,840.98 | 0.00 |
| 12/31/19 | | 88.00 | FC Cost Service | 1/1/2019 | 9,117.24 | | 88.00 | 90,659.86 | -2,555.31 | 6,928.98 | 0.00 |
| 1/1/20 | 750.51 | | Contractual Payment Due | 1/1/2019 | 9,867.75 | | | 90,659.86 | -2,555.31 | 6,928.98 | 0.00 |
| 1/2/20 | | 0.50 | FC Cost Service | 1/1/2019 | 9,867.75 | | 0.50 | 90,659.86 | -2,555.31 | 6,929.48 | 0.00 |
| 1/2/20 | | 0.50 | FC Cost Service | 1/1/2019 | 9,867.75 | | 0.50 | 90,659.86 | -2,555.31 | 6,929.98 | 0.00 |
| 1/10/20 | | 1.06 | FC Cost Service | 1/1/2019 | 9,867.75 | | 1.06 | 90,659.86 | -2,555.31 | 6,931.04 | 0.00 |
| 1/16/20 | | 1.71 | FC Cost Service | 1/1/2019 | 9,867.75 | | 1.71 | 90,659.86 | -2,555.31 | 6,932.75 | 0.00 |
| 1/16/20 | | 5.90 | FC Cost Service | 1/1/2019 | 9,867.75 | | 5.90 | 90,659.86 | -2,555.31 | 6,938.65 | 0.00 |
| 1/17/20 | | 375.00 | FC Atty Fees | 1/1/2019 | 9,867.75 | | 375.00 | 90,659.86 | -2,555.31 | 7,313.65 | 0.00 |
| 1/22/20 | | 1.06 | FC Cost Service | 1/1/2019 | 9,867.75 | | 1.06 | 90,659.86 | -2,555.31 | 7,314.71 | 0.00 |
| 1/22/20 | | 5.60 | FC Cost Service | 1/1/2019 | 9,867.75 | | 5.60 | 90,659.86 | -2,555.31 | 7,320.31 | 0.00 |
| 1/30/20 | | 15.00 | Property Inspection | 1/1/2019 | 9,867.75 | | 15.00 | 90,659.86 | -2,555.31 | 7,335.31 | 0.00 |
| 2/1/20 | 750.51 | | Contractual Payment Due | 1/1/2019 | 10,618.26 | | | 90,659.86 | -2,555.31 | 7,335.31 | 0.00 |
| 2/7/20 | | 88.00 | FC Cost Service | 1/1/2019 | 10,618.26 | | 88.00 | 90,659.86 | -2,555.31 | 7,423.31 | 0.00 |
| 3/25/20 | | -842.84 | Atty Refund | 1/1/2019 | 10,618.26 | | -842.84 | 90,659.86 | -2,555.31 | 6,580.47 | 0.00 |

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.



# M&T Bank

**RETURN SERVICE ONLY**
Please do not send mail to this address
P.O. Box 619063
Dallas, TX 75261-9063

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT



ROBIN M GARRETT
101 FAME AVE
HANOVER PA 17331-1536

**Contact Us**

| | |
|---|---|
| Customer Service: | 1-800-411-7627 |
| Property Tax: | 1-866-406-0949 |
| Property Insurance: | 1-888-882-1847 |
| Home Purchase or Refinancing: | 1-800-479-1992 |
| NMLS #381076 | |

Correspondence Address:

PO BOX 1288
BUFFALO, NY 14240-1288

https://onlinebanking.mtb.com

Property Address: 101 FAME AVENUE
HANOVER PA, 17331

Statement Date: 02/14/20

Dear Customer,

As your mortgage partner, we strive to exceed your servicing expectations. We are providing you with the following statement which details your escrow account activity. Please refer to our Frequently Asked Questions, page 4, or call one of the appropriate customer service numbers referenced above with any questions or concerns.

**Based on our review, you have no shortage or surplus.**

Your Account History, page 2, shows what has already happened on your account. To see what we anticipate happening with your account over the next 12 months, turn to Projected Escrow Payments, page 3.

## Your Mortgage Payment Options

As a result of this analysis, we have determined your payment amount will change.

| Payment Information | Current Monthly Payment | New Monthly Payment for 03/01/2020 |
|---|---|---|
| Principal & Interest: | $454.00 | $454.00 |
| Escrow Payment: | $305.77 | $302.52 |
| Total Payment: | $759.77 | $756.52 |

The servicer is required to complete an escrow account analysis annually to determine whether a surplus, shortage or deficiency exists and must make any necessary adjustments to the account. Upon completion of the analysis, the lender is then required to prepare and submit an annual escrow account statement to the customer.

005-0814-1100F

INTERNET REPRINT

This space is intentionally left blank

## Your Account History**

Please remember, as your taxes and/or insurance increase on an annual basis, the escrow portion of your payment may increase.
If you have any questions about this Escrow Analysis, please call our Customer Service Department toll free at 1-800-411-7627.

| Month | Projected Payment to Escrow | Actual Payment to Escrow | Description | Projected Disbursement | Actual Disbursement | Projected Balance | Actual Balance |
|---|---|---|---|---|---|---|---|
| | | | **Beginning Balance** | | | $0.00 | $57.44 |
| Aug  19 | | | School Tax | | $1,865.75   * | $0.00 | -$1,808.31 |
| Sep  19 | | | Hazard Ins | | $747.00   * | $0.00 | -$2,555.31 |
| Feb  20 | | $4,262.26   * | | | | $0.00 | $1,706.95 |

The total amount of escrow payments received during this period was $4,262.26 and the total escrow disbursements were $2,612.75.

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount of the deposit/disbursement.
** This section may also reflect anticipated escrow activity that has not yet occurred prior to the effective date of this analysis.

Borrower Paid Mortgage Insurance Premium: Your mortgage loan requires a borrower paid mortgage insurance premium ("MIP"). MIP is insurance from the Federal Housing Administration ("FHA") that protects lenders against loss in the event a borrower defaults on a mortgage.

**Effective for all loans closed on or after January 1, 2001, FHA annual MIP will be automatically cancelled under the following conditions:**

**Loans with FHA case numbers assigned before June 3, 2013:**
·  Mortgage loan terms greater than 15 years:  the annual MIP will be cancelled when the loan to value ratio reaches 78%, provided  he mortgagor has paid  he annual mortgage insurance premium for at least five years.
·  Mortgage loan terms less than or equal to 15 years with a loan to value ratio greater than 78%:  the annual MIP will be cancelled when the loan to value ratio reaches 78%.

**FHA will determine when you have reached the 78% loan to value ratio based on the lower of the sales price or appraised value at origination.**  New appraised values will not be considered. Cancellation of the annual mortgage insurance premium will normally be based on the scheduled amortization of the loan. However, in cases where additional payments have been applied to the loan balance as a prepayment, cancellation can be based on the actual amortization of the loan.  If you have prepaid and believe you have met the requirements for cancelling the FHA insurance, please send a written request to us at P.O. Box 1288, Buffalo, NY  14240.

**Loans with FHA case numbers assigned on or after June 3, 2013:**
·  Mortgage loan terms greater than 15 years wi h loan to value ra io greater than 90%:  duration of the annual MIP is the loan term.
·  Mortgage loan terms greater than 15 years wi h loan to value ra io less  han or equal to 90%:  duration of the annual MIP is 11 years.
·  Mortgage loan terms less than or equal to 15 years with loan to value ratio greater than 90%:  duration of the annual MIP is the loan term.
·  Mortgage loan terms less than or equal to 15 years with loan to value ratio less than or equal to 90%:  duration of the annual MIP is 11 years.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obliga ion. However, M&T Bank retains rights under its security instrument, including the right to foreclose its lien.

## Projected Escrow Payments Over the Next 12 Months

### Anticipated Annual Disbursements

| | |
|---|---|
| City Tax: | $1,017.51 |
| Taxes: | $1,865.75 |
| Hazard Ins: | $747.00 |
| Total: | $3,630.26 |

The cushion allowed by federal law (RESPA) is two times your monthly escrow payment (excluding MIP/PMI), unless state law specifies a lower amount.

### Projected Escrow Balance Summary

M&T Bank expects to pay $3,630.26 over the next 12 months.

Here's how to calculate your new monthly escrow payment:

| | |
|---|---|
| Total Taxes and Insurance: | $3,630.26 |
| Divided by 12 months: | $302.52 |
| New Monthly Escrow Payment: | $302.52 |

Projections for the coming year: The following summary shows anticipated activity in your escrow account for the next twelve months, which was used to calculate your payment above.

| Month | Monthly Escrow Payment | Amount Scheduled to be Paid | Description | Projection Based On Current Balance | Projection Based On Required Balance |
|---|---|---|---|---|---|
| | | | Beginning Balance | $1,706.95 | $1,815.14 |
| Mar 20 | $302.52 | | | $2,009.47 | $2,117.66 |
| Apr 20 | $302.52 | $1,017.51 | Borough Tax | $1,294.48 | $1,402.67 |
| May 20 | $302.52 | | | $1,597.00 | $1,705.19 |
| Jun 20 | $302.52 | | | $1,899.52 | $2,007.71 |
| Jul 20 | $302.52 | | | $2,202.04 | $2,310.23 |
| Aug 20 | $302.52 | $1,865.75 | School Tax | $638.81 | $747.00 |
| Sep 20 | $302.52 | | | $941.33 | $1,049.52 |
| Oct 20 | $302.52 | $747.00 | Hazard Ins | $496.85 | $605.04 |
| Nov 20 | $302.52 | | | $799.37 | $907.56 |
| Dec 20 | $302.52 | | | $1,101.89 | $1,210.08 |
| Jan 21 | $302.52 | | | $1,404.41 | $1,512.60 |
| Feb 21 | $302.52 | | | $1,706.93 | $1,815.12 |

### Escrow Requirements, New Mortgage Payment and Anticipated Annual Disbursements

| | |
|---|---|
| Projected Beginning Balance | $1,706.95 |
| -Required Minimum Balance | $1,815.14 |
| Surplus/Shortage | $0.00** |

Your lowest monthly escrow balance for the next 12 months should reach $605.04, which equals a reserve of two months escrow deposit. The expected amount in your escrow account after your 2/20 payment is $1,706.95. Your starting balance according to this analysis should be $1,815.14. This means that your have neither a shortage or surplus.

**This has been adjusted for the bankruptcy proof of claim.

# Mortgagor Guide to Frequently Asked Escrow Analysis Questions (FAQ Document)

- **What is an escrow analysis and why am I receiving this document?**
Federal mortgage laws require all mortgage lenders to perform an escrow analysis on all loans minimally once a year. As a result, M&T Bank conducts an escrow analysis accordingly. The analysis is a calculation of your escrowed items – when they are due, the frequency of pay (annually, semi-annually, and quarterly) and the amount of the payment. This then determines if we are over collecting, under collecting or accurately collecting funds to make these payments on your behalf.
There are several reasons why an off-cycle analysis is performed. Common reasons include: loan is acquired or transferred, customer request (new exemption or adjusted bill issued), change in insurance or tax due dates.

- **What is an escrow account?**
An escrow account is an account set inside your mortgage account. On a monthly basis funds you remit are placed in the account, held and when the time comes, paid to your tax and/or insurance agency. A full accounting of these funds appears on the following statements: monthly mortgage statement, year-end statement and your escrow analysis statement. Typically the payments made are to your real estate tax municipalities and insurance agent. Other payments may be made according to your mortgage agreement.

- **What is an escrow payment?**
The portion of your monthly payment remitted which is held and then used to pay your escrowed items as they become due.

- **How do you determine the required beginning escrow balance?**
The portion of your monthly payment remitted which is held and then used to pay your escrowed items as they become due.

- **What is an escrow reserve also known as a cushion?**
An escrow reserve also known as a cushion is the amount of money collected in the escrow to cover any unanticipated increases in your real estate tax or insurance premium payment. It acts as a buffer and prevents your escrow account from being overdrawn. An escrow reserve exists on your account unless your mortgage documents or state law applies.

- **How is an escrow analysis completed?**
We itemize all applicable disbursements such as the real estate property tax and insurance premium which are scheduled to be paid on your behalf in the next 12 months. We take the total and divide the payment by 12 payments. The total amount of the disbursements divided by 12 is equal to your monthly escrow payment.

- **Will my escrow payment amount remain the same if I remit the entire shortage amount at once?**
By paying the full shortage amount this will result in an adjustment to your account which will result in a payment with the smallest possible increase in your monthly mortgage payment. It's important to keep in mind any increase in your real estate tax amount and/or insurance premium may cause your payment amount to change even if you pay your shortage amount.

- **If I would like to remit the shortage payment, what steps do I need to take?**
You may pay the entire shortage amount by returning the shortage coupon attached to the bottom of page 1 of your escrow analysis along with your check to: M&T Bank, Escrow Department, PO Box 64787, Baltimore, MD 21264-4787

- **What if I do not remit the shortage payment?**
If you do not wish to remit the entire shortage payment in one lump sum, you can instead remit the new payment amount over the next 12 months. The escrow analysis calculation automatically spreads the shortage amount over the next 12 months.

- **Why did my monthly escrow payment amount change?**
There are a number of reasons why escrow payment amounts change. Below are the most common reasons why the amount may change:

**Real Estate Tax –**
Tax rate and/or property's assessed value changed
Tax exemption status added, changed or removed
The payment of a supplemental tax bill or delinquent tax paid from escrow
New tax requirement
Tax(es) paid as a result of non-payment

**Insurance Premium(s) –**
Premium rate changed
Coverage changed
Additional premium paid but not anticipated to be paid from escrow, such as change in carrier
New insurance requirement
Lender paid insurance from escrow
Flood insurance map changed

**Payments –**
Monthly payments received were a different amount than what was expected. For example:
- The monthly payments received were less than the amount requested, shorting the funding of escrow
- Previous escrow shortage amount was not paid in full before new analysis

- **Information Regarding Insurance –**
Hazard insurance, also referred to as homeowner's insurance, is an insurance policy purchased to protect your property from certain hazards such as fire and theft. Policy coverage may vary. See your insurance policy information for details regarding your specific coverage(s).
If you decide to change your insurance carrier, send the new policy information to: M&T Bank, Its Successors and/or Assigns, PO Box 5738, Springfield, Ohio 45501-5738

Fax: 866-410-9956

Additional questions can be directed to 888-882-1847.

- **Information Regarding Real Estate Tax Bills –**
Where to mail your tax bill:

M&T Bank
PO Box 23628
Rochester, NY 14692-9813
FAX: 817-826-0675

Equal Housing Lender. © 2016 M&T Bank. Member FDIC. CS1207 (7/16) MC

# M&T Bank – CAM Support Department

## Original Document Inventory and Tracking

**Loan Number:** ██████████

**Received by:** <u>Darlene Morton</u>   **Date** <u>6/ 2 / 2019</u>

| | **Original Document Received (Y/N/Copy)?** | **Shipped (Date/Initials)** | **Returned (Date/Initials)** |
|---|---|---|---|
| Note | Yes | | |
| Mortgage | | | |
| Title Policy | | | |
| Unrecorded Assignment | | | |
| MIC/LGC | | | |
| Pre-Payment Penalty Rider | | | |
| Loan Mod. Agreement | | | |

Additional Notes:

_____

_____

_____

_____

_____

# NOTE

OCTOBER 20, 2008
　　　　　　　　[Date]
101 FAME AVENUE, HANOVER, PA  17331

[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
PNC MORTGAGE, LLC

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED NINE
THOUSAND FOUR HUNDRED SIX AND 00/100

Dollars (U.S. $ *******109,406.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of SEVEN
percent (　7.000　　　　　　　%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
DECEMBER 01　　, 2008　　. Any principal and interest remaining on the first day of NOVEMBER
2038　　, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ
071014701　　　　　　　　　　　　or at such place as Lender may designate in writing
by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ *******727.88　　. This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge　　☐ Growing Equity Allonge　　☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.



VMP® -1R (9601)　　**FHA Multistate Fixed Rate Note - 10/95**
　　　　　　　VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2　　　　　　　Initials: _____

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000** %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
                        -Borrower

**ROBIN M GARRETT**                        _____ (Seal)
                                                                -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                                                                -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                                                                -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                                                                -Borrower

Case 1:20-bk-00459-HWV    Doc 25-2    Filed 06/26/20    Entered 06/26/20 15:55:38    Desc
Exhibit Proof of Claim    Page 16 of 56

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY

DAVID C. PETERSON, SENIOR VICE PRESIDENT
062

PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
WITHOUT RECOURSE

PNC MORTGAGE, LLC

BY

SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT

WITHOUT RECOURSE
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.

BY

SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT
0002

WITHOUT RECOURSE
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.     KAY 7-18-14

PNC MORTGAGE, LLC

BY WELLS FARGO BANK, N.A.
ATTORNEY-IN-FACT

SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT

WITHOUT RECOURSE
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.

BY

Joan M. Mills, Vice President

QC
VPLD
12.11-17

PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
WITHOUT RECOURSE
PNC MORTGAGE, LLC

Joan M. Mills, VICE PRESIDENT



Prepared By:
PNC Mortgage, LLC
2710 5TH Avenue South
Minneapolis, MN 55408

Return To:
Wells Fargo Home Mortgage
Attn: Final Documents
1000 Blue Gentian Rd
Eagan, MN 55121

## ASSIGNMENT OF MORTGAGE

FOR VALUABLE CONSIDERATION, **PNC MORTGAGE, LLC**, as grantor existing under the laws of **THE STATE OF DELAWARE**, Assignor (whether one or more), hereby sells, assigns and transfers to **WELLS FARGO BANK, N.A.**, as grantee existing under the laws of **THE UNITED STATES**, whose address is P.O. Box 5137, Des Moines, IA 50306-5137, Assignee (whether one or more), the Assignor's interest in the Mortgage dated **OCTOBER 20, 2008** executed by **ROBIN M. GARRETT, A ~~MARRIED~~ PERSON** Single Mortgagor, to **PNC ~~MORTGAGE, LLC~~ as Mortgagee, and filed for record**

as Document Number _____ (or in Book _1991_

of _____ 4880 Page), in the office of the (County Recorder) (Register of Titles) of **YORK** County, **PENNSYLVANIA**, together with all right and interest in the note and obligations therein specified and the debt thereby secured. Assignor covenants with Assignee, its successors and assigns, that there is still due and unpaid of the debt secured by the Mortgage in the sum of **ONE HUNDRED NINE THOUSAND FOUR HUNDRED SIX DOLLARS AND 00/100 ($109,406.00)** with interest thereon from **OCTOBER 20, 2008**, and that Assignor has good right to sell, assign and transfer the same. Legal Descriptions is as follows:

**SEE ATTACHED**

Book **1991** Page **4891**

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
                     HNVR
YCGIS REGISTRY 01/22/2015 BY JV
```

This Document Prepared By:
MARIA MORROW
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715
(800) 416-1472

When Recorded Mail To:
FIRST AMERICAN TITLE
ATTN: LMTS
P.O. BOX 27670
SANTA ANA, CA 92799-7670

[Space Above This Line for R

Original Principal Amount: $109,406.00
Unpaid Principal Amount: $102,061.16
New Principal Amount $78,149.99
New Money (Cap): $0.00

## LOAN MODIFICATION AGREEMENT (MORTGAGE)
### (Providing for Fixed Rate)

This Loan Modification Agreement ("Agreement"), made this 4TH day of JUNE, 2014, between ROBIN M GARRETT, A SINGLE PERSON ("Borrower"), whose address is 101 FAME AVENUE, HANOVER, PENNSYLVANIA 17331 and WELLS FARGO BANK, N.A. ("Lender"), whose address is 3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715 amends and supplements (1) the Mortage, Deed of Trust or Security Deed (the "Security Instrument"), dated OCTOBER 20, 2008 and recorded on OCTOBER 28, 2008 in BOOK 1991 PAGE 4880, YORK COUNTY, PENNSYLVANIA, and (2) the Note, in the original principal amount of U.S. $109,406.00, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
101 FAME AVENUE, HANOVER, PENNSYLVANIA 17331

Wells Fargo Custom FHA HAMP Loan Modification Agreement
First American Mortgage Services                          Page 1

the real property described is located in **YORK COUNTY, PENNSYLVANIA** and being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

2. As of, JULY 1, 2014 the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$78,149.99**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$0.00** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed. This **Unpaid Principal Balance has been reduced by the contemporaneous HUD Partial Claim amount of $23,911.17. This agreement is conditioned on the proper execution and recording of this HUD Partial Claim.**

3. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.6250%**, from JULY 1, 2014. The Borrower promises to make monthly payments of principal and interest of U.S. **$401.80**, beginning on the 1ST day of AUGUST, 2014, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on JULY 1, 2044 (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

4. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

5. The Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

6. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:

Wells Fargo Custom FHA HAMP Loan Modification Agreement
First Andersen Mortgage Services                    Page 2

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

8. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

9. If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure

Wells Fargo Custom FHA HAMP Loan Modification Agreement

First American Mortgage Services                                        Page 3

In Witness Whereof, the Lender have executed this Agreement.

WELLS FARGO BANK, N.A.                    Yawoa Edzodzi Konou          07/01/14

By _____              Vice President Loan Documentation     _____
                                         (print name)                          Date
                                         (title)

[Space Below This Line for Acknowledgments]

**LENDER ACKNOWLEDGMENT**

STATE OF _____mn_____                     COUNTY OF _____Dakota_____

The instrument was acknowledged before me this _____7/01/2014_____ by

_____Yawoa Edzodzi Konou_____                                         the

_____Vice President Loan Documentation_____     of   WELLS   FARGO   BANK,   N.A.,

a   Vice President Loan Documentation   , on behalf of said company.


_____
Notary Public

Printed Name:   Julie Ann Prieto

My commission expires:   1/31/2019

THIS DOCUMENT WAS PREPARED BY:
MARIA MORROW
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715

Wells Fargo Custom FHA HAMP Loan Modification Agreement
First American Mortgage Services                    Page 4

In Witness Whereof, I have executed this Agreement.

_Rob M Grtt_

Borrower: ROBIN M GARRETT          Date  6/14/14

_____          _____
Borrower:                          Date

_____          _____
Borrower:                          Date

_____          _____
Borrower:                          Date

                    [Space Below This Line for Acknowledgments]

## BORROWER ACKNOWLEDGMENT

STATE OF  PA

COUNTY OF  Adams

On this, the  14  day of  June  , 2014  before me
Megan M Laughman , the undersigned officer, personally appeared **ROBIN M GARRETT** known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal

_Megan M Laughman_
Notary Public

Printed Name: _Megan Laughman_

My commission expires: _1/9/15_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MEGAN M. LAUGHMAN, Notary Public
Conewago Twp., Adams County
My Commission Expires Jan. 9, 2015

Wells Fargo Custom FHA HAMP Loan Modification Agreement
First American Mortgage Services                    Page 5

# EXHIBIT A

**BORROWER(S): ROBIN M GARRETT, A SINGLE PERSON**

**LEGAL DESCRIPTION:** The land referred to is situated in the STATE OF PENNSYLVANIA, COUNTY OF YORK, BOROUGH OF HANOVER

BEGINNING FOR A POINT AT A STEEL PIN AT THE INTERSECTION OF EAST WALNUT STREET AND MOULSTOWN ROAD; THENCE ALONG THE MOULSTOWN ROAD SOUTH EIGHTY-NINE (89) DEGREES THIRTY (30) MINUTES THIRTY (30) SECONDS EAST, FORTY-FOUR AND THIRTY ONE-HUNDREDTHS (44.30) FEET TO A POINT; THENCE IN SAID MOULSTOWN ROAD NORTH THIRTY-SEVEN (37) DEGREES THIRTY-FIVE (35) MINUTES EAST, TWENTY AND SIXTY-SEVEN HUNDREDTHS (20.67) FEET TO A POINT IN THE CENTER OF SAID ROAD; THENCE ALONG THE CENTER OF SAID ROAD NORTH EIGHTY-NINE (89) DEGREES THIRTY-FIVE (35) MINUTES EAST, TWENTY-NINE AND EIGHTY-SEVEN HUNDREDTHS (29.87) FEET TO A POINT; THENCE IN SAID ROAD AND THROUGH A RAILROAD SPIKE SET NINETEEN AND EIGHTY-SIX HUNDREDTHS (19.86) FEET FROM THE CENTER OF SAID ROAD AND ALONG OTHER LANDS OF MAZZIE A. STERNER ESTATE, SOUTH TWENTY-SEVEN (27) DEGREES FIFTY-THREE (53) MINUTES THIRTY (30) SECONDS EAST, NINETY-TWO AND SIXTY-EIGHT HUNDREDTHS (92.68) FEET TO A STEEL PIN AT LAND OF HORACE MOUL; THENCE ALONG SAID LANDS SOUTH SIXTY-TWO (62) DEGREES WEST FIFTY-FIVE AND FIFTY-FIVE HUNDREDTHS (55.55) FEET TO A STEEL PIN ALONG FAME AVENUE; THENCE ALONG SAID AVENUE NORTH FORTY-NINE (49) DEGREES FIFTY-FIVE (55) MINUTES TWENTY (20) SECONDS WEST, ONE HUNDRED TEN AND SIXTY-ONE HUNDREDTHS (110.61) FEET TO A STEEL PIN, AT THE INTERSECTION OF SAID AVENUE WITH EAST WALNUT STREET; THENCE ALONG SAID STREET NORTH NINE (9) DEGREES FORTY-SEVEN (47) MINUTES FORTY (40) SECONDS EAST, TWENTY AND EIGHTY-SEVEN (20.87) HUNDREDTHS FEET TO A STEEL PIN, THE PLACE OF BEGINNING. AS PER SURVEY MADE BY J. H. RIFE, REGISTERED ENGINEER, DATED JULY 7,1964.

ALSO KNOWN AS: 101 FAME AVENUE, HANOVER, PENNSYLVANIA 17331

Date: JUNE 4, 2014
Loan Number: (scan barcode)
Lender: WELLS FARGO BANK, N.A.
Borrower: ROBIN M GARRETT
Property Address: 101 FAME AVENUE, HANOVER, PENNSYLVANIA 17331

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____     6/14/14
Borrower                                                              Date
ROBIN M GARRETT

_____     _____
Borrower                                                              Date

_____     _____
Borrower                                                              Date

_____     _____
Borrower                                                              Date

_____     _____
Borrower                                                              Date

Wells Fargo Custom FHA HAMP Loan Modification Agreement
First American Mortgage Services                                    Page 7

# CERTIFICATE OF RESIDENCE

## TITLE OF DOCUMENT
LOAN MODIFICATION AGREEMENT

**BETWEEN:**
ROBIN M GARRETT (assignor/Mortgagor/grantor)

**AND:**
WELLS FARGO BANK, N.A. (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within name Mortgagee is:
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715

By: _Clair Cla_____

Print Name: _Maria Morrow_____

Title: _LSS 4_____

First American Mortgage Services



**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*

Instrument Number - 2015002898          Book - 2307   Starting Page - 73
Recorded On 1/22/2015 At 11:12:20 AM    * Total Pages - 9
* **Instrument Type - MODIFICATION OF MORTGAGE**

▇▇▇▇▇▇▇▇▇▇
* **Grantor - GARRETT, ROBIN M**
* **Grantee - WELLS FARGO BANK N A**
  User - JMR                            * **Received By:**
* **Customer - SIMPLIFILE LC E-RECORDING**

| * **FEES** | | **PARCEL IDENTIFICATION NUMBER** |
|---|---|---|
| STATE WRIT TAX | $0.50 | |
| RECORDING FEES | $21.00 | ▇▇▇▇▇▇▇▇ |
| PIN NUMBER FEES | $10.00 | Total Parcels: 1 |
| COUNTY ARCHIVES FEE | $2.00 | |
| ROD ARCHIVES FEE | $3.00 | |
| TOTAL PAID | $36.50 | |

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
### *PLEASE DO NOT DETACH*
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2307** Page: **81**

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
                    HNVR
YCSIS REGISTRY 12/21/2017 BY JV
```

This Document Prepared By:
**JOSHUA JOYCE**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**
**(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE CO.**
**DTO – MAIL STOP 3-2-8**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA 92707-9991**

_____ [Space Above This Line for Recording Data]

**Original Principal Amount: $109,406.00**
**Unpaid Principal Amount: $76,175.71**
**New Principal Amount $92,287.22**
**Total Cap Amount: $16,111.51**

# HOME AFFORDABLE MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: **NOVEMBER 15, 2017**
Borrower ("I"):[1] **ROBIN M GARRETT**
Borrower Mailing Address: **101 FAME AVENUE, HANOVER, PENNSYLVANIA 17331**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **OCTOBER 20, 2008** and the Note
("Note") date of **OCTOBER 20, 2008** and Recorded on **OCTOBER 28, 2008** in INSTRUMENT NO.
**2008067305 BOOK 1991 PAGE 4880**, of the Official Records of YORK COUNTY, PENNSYLVANIA

Property Address ("Property"): **101 FAME AVENUE, HANOVER, PENNSYLVANIA 17331**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Wells Fargo Custom FHA Home Affordable Modification Agreement
11102017_448

Page 1

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

This FHA Home Affordable Modification Agreement ("Agreement") is made on **NOVEMBER 15, 2017** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

1. **Borrower Representations.**

   I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the terms of the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future; I did not intentionally or purposefully default on the terms of the Loan Documents in order to obtain a loan modification;

   B. I certify the Property is not condemned and is not vacant without the intent to re-occupy;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the FHA Home Affordable Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and,

   G. If borrower has filed for or received a discharge in a bankruptcy proceeding subsequent to or in conjunction with the execution of this Agreement and said debt was not reaffirmed during the course of the proceeding, Lender agrees that I will not have personal liability on the debt pursuant

Wells Fargo Custom FHA Home Affordable Modification Agreement
11102017_448

Page 2

to this Agreement and may only enforce the lien as against the property.

2. **Acknowledgements and Preconditions to Modification.**

I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

C. If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

3. **The Modification.**

If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **JANUARY 1, 2018** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make all required payments as a precondition to this modification under a workout plan or trial period plan, the Lender has the right to reject this Agreement even if I have signed and returned this Agreement. The first modified payment will be due on **JANUARY 1, 2018**.

A. The new Maturity Date will be: **DECEMBER 1, 2047.**

B. The modified principal balance of my Note will include amounts and arrearages that will be past due as of the Modification Effective Date. This does not include unpaid late charges, valuation, property preservation and other charges not permitted under the terms of the FHA Home Affordable Modification Program. Permitted amounts and arrearages may include unpaid and deferred interest, fees, escrow advances and other costs less any amounts paid to the Lender but not previously credited to my Loan, collectively "Unpaid Amounts"; the portion of Unpaid Amounts capitalized is **$16,111.51.** The new principal balance of my Note will be **$92,287.22** (the "New Principal Balance") which includes the capitalized Unpaid Amounts. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. With the modification you will have a total partial claim due of **$1,182.37,** which includes **$1,182.37** that has been reduced from the Unpaid Principal Balance to reach the New Principal Balance above. This Agreement is conditional on the proper execution and recording of this HUD

Partial Claim.

D.  Interest at the rate of **4.2500%** will begin to accrue on the Interest Bearing Principal Balance as of **DECEMBER 1, 2017** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **JANUARY 1, 2018**. Interest due on each monthly payment will be calculated by multiplying the New Principal/Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12).   My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|--------------------------------|------------------------|-------------------|
| 360 | 4.2500% | 12/01/2017 | $454.00 | $288.48 | $742.48 | 01/01/2018 |

**\*After your modification is complete, escrow payments adjust at least annually in accordance with applicable law therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

E.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

F.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth.

## 4.  Additional Agreements.

I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Mortgage Assistance that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this section. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge,

an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender may only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not

Wells Fargo Custom FHA Home Affordable Modification Agreement
11102017_448

Page 6

become effective on the Modification Effective Date and the Agreement will be null and void.

L.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the FHA Home Affordable Modification Program.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (b) companies that perform support services for the FHA Home Affordable Modification Program; and (c) any HUD certified housing counselor.

N.   I agree, that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this section shall be referred to as "Documents." I agree to deliver the Documents within fifteen (15) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P.   CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this modification, hereby grants Wells Fargo Home Mortgage , as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's modification. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

Q.   Borrower must deliver to Wells Fargo Home Mortgage a properly signed Modification Agreement by **NOVEMBER 30, 2017.** If Borrower does not return a properly signed Modification Agreement by this date and make all payments pursuant to the trial plan agreement or any other required pre-

Wells Fargo Custom FHA Home Affordable Modification Agreement
11102017_448

modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If Borrower returns the properly signed Modification Agreement by said date, payments pursuant to the loan Modification Agreement are due as outlined in this Modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan Modification Agreement if Borrower fails to make the first payment due pursuant to this loan Modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document may not be accepted and another copy of the Agreement may be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

Wells Fargo Custom FHA Home Affordable Modification Agreement
11102017_448
Page 8

In Witness Whereof, I have executed this Agreement.

_____     11/26/17
Borrower: ROBIN M GARRETT                          Date

_____ [Space Below This Line for Acknowledgments] _____

## BORROWER ACKNOWLEDGMENT

STATE OF PA _____

COUNTY OF York _____

On this, the 26 day of November 2017, before me Teresa M Klinedinst, the undersigned officer, personally appeared **ROBIN M GARRETT**, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal

_____
Notary Public

Printed Name: Teresa M Klinedinst

My commission expires: 4/28/2020

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
TERESA M KLINEDINST
Notary Public
NORTH CODORUS TWP, YORK COUNTY
My Commission Expires Apr 28, 2020

Wells Fargo Custom FHA Home Affordable Modification Agreement
11102017_448
Page 9

In Witness Whereof, the Lender has executed this Agreement.

WELLS FARGO BANK, N.A.

By _Jessica Gadea_     Jessica Gadea Sanchez   12/14/17
                       Vice President Loan Documentation   /Date

                  (print name)

                  (title)

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

**STATE OF MINNESOTA**

**COUNTY OF** _Dakota_

This instrument was acknowledged before me _December 14, 2017_ (date) by _Jessica Gadea Sanchez_ (name(s) of person(s)) as _Vice President Loan Documentation_ (type of authority, e.g., officer, trustee, etc.) of **WELLS FARGO BANK, N.A.** (name of party on behalf of whom the instrument was executed).

_Kirsten Hust_
Notary Public

          Kirsten Hust

Printed Name: _____

My Commission Expires:
     01/31/2022

                  **KIRSTEN HUST**
                 NOTARY PUBLIC - MINNESOTA
            MY COMMISSION EXPIRES 01/31/2022

## EXHIBIT A

**BORROWER(S): ROBIN M GARRETT**

███████████████████

**LEGAL DESCRIPTION:**

The land referred to in this document is situated in the STATE OF PENNSYLVANIA, COUNTY OF YORK, ~~CITY OF HANOVER~~ and described as follows:
BOROUGH OF HANOVER
ALL THAT THE FOLLOWING DESCRIBED TRACT OF LAND SITUATE, LYING AND BEING IN THE BOROUGH OF HANOVER, YORK COUNTY, PENNSYLVANIA, BOUNDED AND LIMITED AS FOLLOWS, TO WIT:

BEGINNING FOR A POINT AT A STEEL PIN AT THE INTERSECTION OF EAST WALNUT STREET AND MOULSTOWN ROAD; THENCE ALONG THE MOULSTOWN ROAD SOUTH EIGHTY-NINE (89) DEGREES THIRTY (30) MINUTES THIRTY (30) SECONDS EAST, FORTY-FOUR AND THIRTY ONE HUNDREDTHS (44.30) FEET TO A POINT; THENCE IN SAID MOULSTOWN ROAD NORTH THIRTY-SEVEN (37) DEGREES THIRTY-FIVE (35) MINUTES EAST, TWENTY AND SIXTY-SEVEN HUNDREDTHS (20.67) FEET TO A POINT IN THE CENTER OF SAID ROAD; THENCE ALONG THE CENTER OF SAID ROAD NORTH EIGHTY-NINE (89) DEGREES THIRTY-FIVE (35) MINUTES EAST, TWENTY-NINE AND EIGHTY-SEVEN HUNDREDTHS (29.87) FEET TO A POINT; THENCE IN SAID ROAD AND THROUGH A RAILROAD SPIKE SET NINETEEN AND EIGHTY-SIX HUNDREDTHS (19.86) FEET FROM THE CENTER OF SAID ROAD AND ALONG OTHER LANDS OF MAZZIE A. STERNER ESTATE, SOUTH TWENTY-SEVEN (27) DEGREES FIFTY-THREE (53) MINUTES THIRTY (30) SECONDS EAST, NINETY-TWO AND SIXTY-EIGHT HUNDREDTHS (92.68) FEET TO A STEEL PIN AT LAND OF HORACE MOUL; THENCE ALONG SAID LANDS SOUTH SIXTY-TWO (62) DEGREES WEST FIFTY-FIVE AND FIFTY-FIVE HUNDREDTHS (55.55) FEET TO A STEEL PIN ALONG FAME AVENUE; THENCE ALONG SAID AVENUE NORTH FORTY-NINE (49) DEGREES FIFTY-FIVE (55) MINUTES TWENTY (20) SECONDS WEST, ONE HUNDRED TEN AND SIXTY-ONE HUNDREDTHS (110.61) FEET TO A STEEL PIN, AT THE INTERSECTION OF SAID AVENUE WITH EAST WALNUT STREET; THENCE ALONG SAID STREET NORTH NINE (9) DEGREES FORTY-SEVEN (47) MINUTES FORTY (40) SECONDS EAST, TWENTY AND EIGHTY-SEVEN (20.87) HUNDREDTHS FEET TO A STEEL PIN, THE PLACE OF BEGINNING. AS PER SURVEY MADE BY J. H. RIFE, REGISTERED ENGINEER, DATED JULY 7, 1964.

ALSO KNOWN AS: 101 FAME AVENUE, HANOVER, PENNSYLVANIA 17331

Wells Fargo Custom FHA Home Affordable Modification Agreement
11102017_448

███████████████

# CERTIFICATE OF RESIDENCE

**TITLE OF DOCUMENT**
**LOAN MODIFICATION AGREEMENT**

**BETWEEN:**
ROBIN M GARRETT (assignor/Mortgagor/grantor)

**AND:**
WELLS FARGO BANK, N.A. (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is:
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**

*By:* _____

*Print Name:* Vivian Hicks

*Title:* Loan Administration Manager





**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*

Instrument Number - 2017058706              Book - 2452   Starting Page - 5598
Recorded On 12/21/2017 At 12:44:28 PM        * Total Pages - 13
* Instrument Type - **MODIFICATION OF MORTGAGE**

* Grantor - GARRETT, ROBIN M
* Grantee - WELLS FARGO BANK N A
  User - MLC                                        * Received By:
* Customer - FIRST AMERICAN TITLE INSURANCE COMPANY (DC)

| * FEES | | PARCEL IDENTIFICATION NUMBER |
|---|---|---|
| STATE WRIT TAX | $0.50 | |
| RECORDING FEES | $29.00 | **Total Parcels: 1** |
| PIN NUMBER FEES | $10.00 | |
| COUNTY ARCHIVES FEE | $2.00 | |
| ROD ARCHIVES FEE | $3.00 | |
| TOTAL PAID | $44.50 | |

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*

## PLEASE DO NOT DETACH

*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2452**  Page: **5610**

**stewart**
title guaranty company

## EXHIBIT "A"

ALL that the following described tract of land situate, lying and being in the Borough of Hanover, York County, Pennsylvania, bounded and limited as follows, to wit:

BEGINNING for a point at a steel pin at the intersection of East Walnut Street and Moulstown Road; thence along the Moulstown Road South eighty-nine (89) degrees thirty (30) minutes thirty (30) seconds East, Forty-four and thirty one-hundredths (44.30) feet to a point; thence in said Moulstown Road North thirty-seven (37) degrees thirty-five (35) minutes East, twenty and sixty-seven hundredths (20.67) feet to a point in the center of said road; thence along the center of said road North eighty-nine (89) degrees thirty-five (35) minutes East, twenty-nine and eighty-seven hundredths (29.87) feet to a point; thence in said road and through a railroad spike set nineteen and eighty-six hundredths (19.86) feet from the center of said road and along other lands of Mazzie A. Sterner Estate, South twenty-seven (27) degrees fifty-three (53) minutes thirty (30) seconds East, ninety-two and sixty-eight hundredths (92.68) feet to a steel pin at land of Horace Moul; thence along said lands South sixty-two (62) degrees west fifty-five and fifty-five hundredths (55.55) feet to a steel pin along Fame Avenue; thence along said Avenue North forty-nine (49) degrees fifty-five (55) minutes twenty (20) seconds west, one hundred ten and sixty-one hundredths (110.61) feet to a steel pin, at the intersection of said Avenue with East Walnut Street; thence along said Street North nine (9) degrees forty-seven (47) minutes forty (40) seconds East, twenty and eighty-seven (20.87) hundredths feet to a steel pin, the place of BEGINNING. As per Survey made by J. H. Rife, Registered Engineer, dated July 7, 1964.

The improvements thereon being known as 101 Fame Avenue, Hanover, Pennsylvania 17331

Certificate of Residence

I, Laura Steiner, do hereby certify that the correct address of the within-named Lender is P.O. Box 11701, Newark, NJ 071014701

Witness my hand this 20th day of October 2008

_____
Agent of Lender

ASSIGNOR
**PNC MORTGAGE, LLC**

By: _____
Thomas Welsh, V.P. of Loan Documentation

By: _____
Rick Kalthoff, V.P. of Loan Documentation

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

On this, the 20th **day of OCTOBER, 2008** before me, a Notary Public for the State of Minnesota personally appeared Thomas Welsh and Rick Kalthoff who acknowledged themselves to be the Vice Presidents of PNC Mortgage, LLC. and that as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing in the name of the corporation.

I here unto set my hand and official seal.

_____
Arnoldas Vasiliauskas,   Notary Public

**0091801845**

ARNOLDAS VASILIAUSKAS
Notary Public
Minnesota
My Commission Expires January 31, 2011



### YORK COUNTY RECORDER OF DEEDS
### 28 EAST MARKET STREET
### YORK, PA 17401

*Randi L. Reisinger - Recorder*
*Gloria A. Fleming - Deputy*

**Instrument Number - 2008067306**          **Book - 1991   Starting Page - 4891**
**Recorded On 10/28/2008 At 2:37:39 PM**      **\* Total Pages - 4**
**\* Instrument Type - ASSIGNMENT OF MORTGAGE**
   **Invoice Number -**
**\* Grantor - GARRETT, ROBIN H**
**\* Grantee - WELLS FARGO BANK N A**
   **User - DMH**                              **\* Received By:  COUNTER**
**\* Customer - NAT BOYD**

**\* FEES**                         **PARCEL IDENTIFICATION NUMBER**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| RECORDING FEES | $13.00 |
| PIN NUMBER FEES | $2.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $30.50 |

**Total Parcels: 1**

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
## PLEASE DO NOT DETACH
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

**Book: 1991   Page: 4894**

***Send All Notices to Assignee***

RECORDING REQUESTED BY:
**WELLS FARGO BANK, N.A.**
**1000 BLUE GENTIAN RD**
**SUITE 200**
**EAGAN, MN 55121**

WHEN RECORDED MAIL TO:
**WELLS FARGO BANK, N.A.**
1000 BLUE GENTIAN RD #200
█████████

EAGAN, MN 55121-4400
ATTN: ASSIGNMENT TEAM

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
████████          HDVR
        YCSIS REGISTRY 04/09/2019 BY JV
```

### ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A. , 1 HOME CAMPUS , DES MOINES, IA 50328**, by these presents does convey, assign, transfer and set over to: **M&T BANK , 3 FOUNTAIN PLAZA , BUFFALO, NY 14203**, the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$109406.00** is recorded in the State of **PENNSYLVANIA**, County of **York** Official Records, dated **10/20/2008** and recorded on **10/28/2008**, as Instrument No. **2008067305** in Book No. **1991**, at Page No. **4880**
Original Mortgagor: **ROBIN M GARRETT, A SINGLE PERSON**
Original Mortgagee: **PNC MORTGAGE, LLC**
Property Address: **101 FAME AVENUE HANOVER, PA 17331**
Municipality: **Borough of HANOVER**
PIN #: **67000010067000000**
Date: **04/09/2019**

**Assignment Dated: 10/20/2008 Recorded: 10/28/2008 in Book/Reel/Liber: 1991 Page/Folio: 4891 as Instrument No.: 2008067306 Beneficiary/Assignor: PNC MORTGAGE, LLC Assignee: WELLS FARGO BANK, N.A. Loan Amount: $109406.00**

**WELLS FARGO BANK, N.A.**
By:

_Xee Vang_

XEE VANG, Vice President Loan Documentation

STATE OF MN
COUNTY OF Dakota } S.S.

On **04/09/2019** before me, **DEREJE D. BADADA**, a Notary Public, personally appeared **XEE VANG, Vice President Loan Documentation** of **WELLS FARGO BANK, N.A.** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_Dereje D. Badada_

DEREJE D. BADADA, Notary Public
Commission #: 31049021
My Commission Expires: **01/31/2022**

(seal) DEREJE D BADADA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 1/31/22

I do certify that the precise address of M&T BANK is 3 FOUNTAIN PLAZA , BUFFALO, NY 14203

Attested By:

_Xee Vang_

XEE VANG, Vice President Loan Documentation



**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Laura Shue - Recorder*
*Tina M. Channell - Deputy*

Instrument Number - 2019014042
Recorded On 4/9/2019 At 3:38:06 PM
\* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number ▮▮▮▮
\* Grantor - GARRETT, ROBIN M
\* Grantee - M&T BANK
User - TMC
\* Customer - WELLS FARGO BANK, N.A.

Book - 2512   Starting Page - 5363
\* Total Pages - 2

\* Received By:

**PARCEL IDENTIFICATION NUMBER**
▮▮▮▮▮▮▮▮▮

Total Parcels: 1

\* FEES
| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES | $13.00 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $68.75 |

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

THIS IS A CERTIFICATION PAGE
## PLEASE DO NOT DETACH
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2512**  Page: **5364**

Prepared By:
**PNC MORTGAGE, LLC**

**2710 5TH AVENUE S,, MINNEAPOLIS,
MN 554080000**

Return To:
**WFHM FINAL DOCS X9999-01M**

**1000 BLUE GENTIAN ROAD
EAGAN, MN 55121**

Parcel Number

Premises:
**101 FAME AVENUE
HANOVER**

[Space Above This Line For Recording Data]

Commonwealth of Pennsylvania

*Purchase money*

# MORTGAGE

FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on **OCTOBER 20, 2008**
The Mortgagor is **ROBIN M GARRETT, A SINGLE PERSON**

("Borrower"). This Security Instrument is given to **PNC MORTGAGE, LLC
PNC MORTGAGE, LLC**

which is organized and existing under the laws of **THE STATE OF DELAWARE** , and
whose address is **P.O. BOX 11701, NEWARK, NJ 071014701**
("Lender"). Borrower owes Lender the principal sum of
**ONE HUNDRED NINE THOUSAND FOUR HUNDRED SIX AND 00/100**
Dollars (U.S. $ **\*\*\*\*\*\*\*\*109,406.00** ).

NMFL #0642 (PAFM) Rev 4/24/2006

FHA Pennsylvania Mortgage - 4/96

VMP -4R(PA) (0508)

VMP Mortgage Solutions, Inc.

Page 1 of 9   Initials:

Book **1991** Page **4880**



This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **NOVEMBER 01, 2038** . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in **YORK**

County, Pennsylvania:

**\*\*SEE ATTACHED**

which has the address of **101 FAME AVENUE**                                                          [Street]
**HANOVER**                                                    [City], Pennsylvania **17331**              [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the

Initials: _____

**stewart**
title guaranty company

<u>EXHIBIT "A"</u>

ALL that the following described tract of land situate, lying and being in the Borough of Hanover, York County, Pennsylvania, bounded and limited as follows, to wit:

BEGINNING for a point at a steel pin at the intersection of East Walnut Street and Moulstown Road; thence along the Moulstown Road South eighty-nine (89) degrees thirty (30) minutes thirty (30) seconds East, Forty-four and thirty one-hundredths (44.30) feet to a point; thence in said Moulstown Road North thirty-seven (37) degrees thirty-five (35) minutes East, twenty and sixty-seven hundredths (20.67) feet to a point in the center of said road; thence along the center of said road North eighty-nine (89) degrees thirty-five (35) minutes East, twenty-nine and eighty-seven hundredths (29.87) feet to a point; thence in said road and through a railroad spike set nineteen and eighty-six hundredths (19.86) feet from the center of said road and along other lands of Mazzie A. Sterner Estate, South twenty-seven (27) degrees fifty-three (53) minutes thirty (30) seconds East, ninety-two and sixty-eight hundredths (92.68) feet to a steel pin at land of Horace Moul; thence along said lands South sixty-two (62) degrees west fifty-five and fifty-five hundredths (55.55) feet to a steel pin along Fame Avenue; thence along said Avenue North forty-nine (49) degrees fifty-five (55) minutes twenty (20) seconds west, one hundred ten and sixty-one hundredths (110.61) feet to a steel pin, at the intersection of said Avenue with East Walnut Street; thence along said Street North nine (9) degrees forty-seven (47) minutes forty (40) seconds East, twenty and eighty-seven (20.87) hundredths feet to a steel pin, the place of BEGINNING. As per Survey made by J. H. Rife, Registered Engineer, dated July 7, 1964.

The improvements thereon being known as 101 Fame Avenue, Hanover, Pennsylvania 17331

**Tax ID#**

**RGS FILE:**



annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

Initials: _KM H_

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures

Initials: 

from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure

Initials: _KMY_

proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16,

Initials: _KMR_



"Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 _et seq._) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Initials: 

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Growing Equity Rider
- [ ] Graduated Payment Rider
- [ ] Other [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
**ROBIN M GARRETT**                -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)            _____ (Seal)
-Borrower                          -Borrower

_____ (Seal)            _____ (Seal)
-Borrower                          -Borrower

_____ (Seal)            _____ (Seal)
-Borrower                          -Borrower

VMP®-4R(PA) (0506)                 Page 8 of 9

**COMMONWEALTH OF PENNSYLVANIA,** _____ County ss:

On this, **20TH** day of **OCTOBER 2008** , before me, the undersigned officer,
personally appeared **ROBIN M GARRETT**

known to me (or satisfactorily proven) to be the
person(s) whose name is/are subscribed to the within instrument and acknowledged that he/she/they
executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Thomas J. Coyne, Notary Public
Stewartstown Boro, York County
My Commission Expires Jan. 27, 2010
Member, Pennsylvania Association of Notaries

Title of Officer

**Certificate of Residence**

I, THOMAS J. COYNE , do hereby certify that the correct address of
the within-named Lender is **P.O. BOX 11701, NEWARK, NJ 071014701**

Witness my hand this **20TH** day of **OCTOBER 2008**

Agent of Lender

Initials: _____

VMP -4R(PA) (0508) Page 9 of 9

*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA 17401*

*Randi L. Reisinger - Recorder*
*Gloria A. Fleming - Deputy*

**Instrument Number -**
**Recorded On 10/28/2008 At 2:37:38 PM**
* **Instrument Type - MORTGAGE**
**Invoice Number - 797559**
* **Grantor - GARRETT, ROBIN M**
* **Grantee - PNC MORTGAGE LLC**
**User - DMH**
* **Customer - NAT BOYD**

**Book - 1991   Starting Page - 4880**
* **Total Pages - 11**

* **Received By:  COUNTER**

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| RECORDING FEES | $25.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $2.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $54.00 |

**PARCEL IDENTIFICATION NUMBER**
670000100670000000
**Total Parcels: 1**

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*

# *PLEASE DO NOT DETACH*

*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

**Book: 1991  Page: 4890**